KUHN, J.,
dissenting.
U disagree with the reversal of the damages awarded to the Bonvillains. While I do agree that the trial court may have based its ruling that the Bonvillains were entitled to damages under Article 4 of the construction contract, having stated that the drainage requirement “was an unforeseen item,” it is not the only basis that supports the ruling and the opinion’s reversal does not dispose of the matter of plaintiffs’ entitlement to damages in its entirety.
Initially, I note the trial court was not manifestly erroneous in concluding that the drainage requirement was a “hidden condition” that arose after construction began which, under Article 4, requires the Bonvillains to notify Dr. Gentile for a decision as to disposition and supports the trial court’s conclusion imposing the costs of the drainage requirements onto Dr. Gentile. But more importantly, the record also supports the trial court’s finding that the parties agreed to alter any obligation the plaintiffs had (either under the terms of the contract or | ¡¡the jurisprudence) to conform to the parish building code requirement relating to drainage systems for commercial buildings.
In the transcribed reasons for judgment, the trial court stated:
*635 Well, [plaintiffs] see how [the drainage issue] can be worked out and present to the Doctor, hey, this is what it’s going to take to make it right. And from what I heard is they were willing to do everything they can to expend the money, pay me later, let’s just get this done.
After review of the entire transcript, it should be noticed that the trial court’s comments amount to a finding that Dr. Gentile agreed to pay the costs of the drainage project, and this finding is not manifestly erroneous.
Introduced into evidence was a letter from Bonvillain Construction Co., Inc., dated January 26, 2004 and signed by Michael Bonvillain. It was a petition to the parish’s representative, Pat Gordon, requesting permission to pour the foundation and simultaneously engage an engineering firm to develop a drainage system subsequent to the parish’s issuance of the cease-and-desist order. The pertinent provisions of the letter stated, “All requirements due to the drainage ordinance will be passed on to the owner.” Although Dr. Gentile denied having received the letter, Michael Bonvillain testified that he hand delivered it to her. He stated the only thing they discussed at the time was that the parties had to go through more negotiating, and Dr. Gentile replied that they would take care of the matter at the end of the project. Michael Bonvillain also said that Dr. Gentile wanted the Bonvillains to proceed and never advised them that they should not continue if doing so would cost her more. Kirby Bonvillain explained that the drainage noncompliance would have caused a stoppage of the project if the letter had not been sent to Mr. Gordon expressing the manner in which the drainage issue would be resolved. He stated that Michael hand delivered the letter to Dr. Gentile’s office and that the Bonvillains decided to continue with the project and notified Dr. Gentile of their intent. Kirby testified that he communicated to Dr. Gentile that ^without her “agreement” the job would stop, and that she agreed they needed to continue so they could complete the building.
Based on this summarized testimony, it is evident that the trial court concluded that Dr. Gentile received the letter petitioning the Parish to continue the project, which apprised her, “All requirements due to the drainage ordinance will be passed on to the owner.” With this knowledge, she asked the Bonvillains to continue with the project to completion.
As a reviewing court, we are not permitted to reweigh the evidence. The trial court resolved the conflict in the testimony about whether Dr. Gentile received a copy of the January 26, 2004 letter — advising the parish that the requirements of the drainage ordinance were to be passed onto the owner — in favor of the Bonvillains. As such, Dr. Gentile’s notice of the Bonvil-lains’ intent, coupled with her request that the project be continued to completion, was an acquiescence that, at a minimum, amounted to a tacit consent. See La. C.C. art. 1927. Thus, a conclusion that the parties consented to the alteration of the terms of the contract also supports the trial court’s award of damages. Accordingly, I dissent from the reversal.